B. F. MEYER AND F. MEYER, APPELLANTS, vs. MUSCOW B. FOGG, EXECUTOR OF GREEN R. MEYER, DEC'D, APPELLEE.

No one but an heir of the realty or entitled to distribution, has a right to contest the probate of a will or a devise of the realty and slaves.

An executor is not an incompetent witness to the will or devise, unless he is a legatee or devisee, or has an interest in the estate bequeathed to him; commissions to which he may be entitled as executor, will not exclude him under our laws.

Appeal from the Circuit Court of the Eastern Circuit for Marion county.

In November, 1855, Green R. Meyer executed his last will and testament in the presence of S. G. Brown, M. B. Fogg and F. S. Lucias, as subscribing witnesses thereto, bequeathing all his estate to his wife and her heirs, and appointing Muscow B. Fogg, one of the subscribing witnesses, as executor thereof.

In January, 1856, the said will was admitted to probate in Marion county, and letters testamentary were issued by the Judge of Probate to said Muscow B. Fogg. In April, 1856, B. F. Meyer and F. Meyer gave notice to the Judge of Probate in writing that they would contest the said will, and on a hearing before him, their objections were overruled. An appeal was taken to the Circuit Court, and the following grounds urged as reasons for declaring the will void, viz:

*First.* That as the will is on two pieces of paper which are attached together with a wafer, and the signature of

the testator and attesting clause are upon a sheet separate from the body of the will, it should in consequence thereof be declared no will.

*Second.* That as the will was attested by only three witnesses, and Muscow B. Fogg, the executor named therein, appears as one of them, who is incompetent to attest it as a witness, the same is therefore and for that reason void.

The Circuit Court overruled the objections and decided the will to be valid, from which decision an appeal was taken to the Supreme Court.

*S. M. G. Gary* for Appellants.

*Dawkins, Smith and Rogers* for Appellees.

BALTZELL, C. J., delivered the opinion of the Court.

In the matter of the application for probate of the last will and testament of Green R. Meyer, deceased.

The will of Green R. Meyer, late of Marion county, was, in January, 1836, duly admitted to probate, and letters testamentary issued by the Judge of Probate to Muscow B. Fogg, his executor.

In April of the same year, B. F. Meyer and F. Meyer gave notice in writing to the Judge of Probate that they would contest the will. On a hearing this officer overruled their objection and sustained the probate. On appeal to the Judge of the Circuit Court, he made a similar decision, and now the case is presented for our adjudication.

A fatal objection to the case of these contestants arises at the very threshhold, from the want of interest on their part. The only persons competent to contest this will, are the heirs of the realty or distributees entitled to the personalty. Unless there is such interest, no one has a right to complain of injury from the probate. These individuals may occupy such position—their names would indicate it, but this is not sufficient. There should be allegation

and proof to that effect.   The case has been presented and argued on other grounds, and we proceed to treat it with reference to the points discussed before us, desirous of disposing of it on the merits.

The ground of objection here is, that the law requires three witnesses, and as Fogg the executor, one of these, is incompetent on the score of interest, there are in fact but two, and on this account the will is invalid.   It is conceded that he has no interest in the estate bequeathed or devised, and that the only interest he can possibly have is in the commissions or allowances that may be made to him as executor.

It is obvious that the objection is applicable only to so much of this instrument as applies to land and slaves, as our statute requiring three witnesses is specially applied to them, being silent as to the personalty.   It is in these terms : "That every person of the age of twenty-one years, being of sound mind, shall have power by last will and testament in writing, to devise and dispose of his or her lands, tenaments and hereditaments, and of his or her estate, right, title and interest in the same, in possession, remainder or reversion at the time of the execution of said last will and testament, and of the slaves which may be possessed by him or her at the time of his or her death, provided that every such last will and testament shall be signed by the testator, or by some other person in his or her presence and by his or her express directions, and shall be attested and subscribed in the presence of the said testator or testatrix, by three or more witnesses, or else it shall be utterly null and void and of none effect."   Duval, 181.

It is necessary to state that the term devise has a peculiar application to realty, the transfer of which by a testator is designated by that term, whilst that of the personalty is technically denominated the last will and testament.

The statute above quoted embraces slaves also, the latter being regarded of such value as to be classed with the realty, although in other respects it is specially declared to be personalty. Other goods and chattels of a testator are regulated by the common law of England, which holds that "written wills need no witness of their publication. I speak not here of devises of land, which are quite of a different nature, etc. But a testament of chattels written in the testator's own hand, though it has neither his name or his seal to it, nor witnesses present at its publication, is good, provided sufficient proof can be had that it is in his hand-writing." 2 Black. Com., 501–'2.

Our attention, then, will be directed to so much of this instrument as undertakes to dispose of the land and slaves.

An objection of the character raised in this case was taken to a will of the realty in the Court of King's Bench, and held not sustainable, Lord Ellenborough, C. J., saying that "the point had been decided as long ago as Lord Hale's time, that an executor having no interest in the *surplus* was a good witness to prove the will in a cause concerning the estate, and this had been followed by other decisions to the same effect. Here the executor took no interest under the will." Bettison, etc. vs. Bromley, 12. East. 250. To understand this, it may be proper to recollect that by the English law, prevailing at that time, the surplus, after payment of funeral expenses, testamentary charges, debts and legacies, belonged to the executor. 2 Will., 898; Toller, 351; a state of things never prevailing with us. "The surplus is specially required to be distributed according to the provisions of the law regulating descents." Thomp. 191.

It may be said, however, that this authority in East. has not a full application, because in England an executor is not entitled to commissions. Although this may be true, yet where no legacies are given, on petition to the Court of

Chancery for an allowance as a compensation or recompense for loss of time, personal trouble and expense in the management and settlement of the testator's affairs, "it is the settled practice to make the allowance." Note to 3 P. Wms., 251; Brocksoppe vs. Barnes, 5 Mad. Chy., 89, (61.)

Even under this construction of the law, admitting executors as witnesses who were not entitled to the surplus, and rejecting those to whom a devise or legacy had been given, it was perceived that great injury would ensue. Hence the statute 25 George 2, c. 6, was passed, " that if any person shall attest the execution of any will or codicil, (after June, 1752,) to whom any beneficial devise, legacy, estate, interest, gift, or appointment of, or affecting any real or personal estate, other than except charges on lands, tenements or hereditaments for payment of debts, shall be thereby given or made, such devise, legacy, estate, interest, gift-or appointment shall, so far only as concerns such person attesting the execution of such will or codicil, or any person claiming under him, be utterly null and void, and such person shall be admitted as a witness to the execution of such will or codicil, within the intent of said act, notwithstanding such devise, legacy, estate, interest, gift or appointment mentioned in such will or codicil." Powell Dev., 116.

This having been enacted previous to the 4th July, 1776, became a law of Florida under the provisions of our law adopting the statute and common laws of England prior to that period. Such was the state of the English common law and statutes on this subject. Have they been altered or repealed by any law passed by our Legislature?

The Territorial Legislature, in the general law passed on the subject of wills, letters of administration, &c., amongst others enacted the following clause in 1828 : " That last

wills and testaments, both of real and personal property, may be admitted to probate upon the oath of any person appointed executor or executrix, or where no person is appointed, of any other credible person having no interest under the will, that he or she verily believes the writing exhibited as the last will and testament, to be the true last will and testament of the deceased," &c. Duval, 182.

If the question depended upon this clause, there would be little difficulty in its solution. The probate is expressly directed to be granted on the oath of the executor, without any restriction as to interest, and he is made to occupy the position of a credible witness, having no interest under the will. The probability is that this was regarded as improvident or obscure, hence another law was passed the ensuing year, that "no will shall be admitted to probate upon the oath of any person appointed executor or executrix thereto, when it shall appear by said will or otherwise that said person so appointed is interested in the estate therein bequeathed, or any part thereof." Laws 1829, Duval, 185.

The character of the interest to produce this exclusion is the enquiry before the Court. Does it mean an executor having an obvious interest in the estate bequeathed, or a part thereof, as a legatee or devisee, or does it extend further and embrace such claim on the estate as he may have for services to be rendered after the death of the testator? If the former be the true view of the subject, then the executor is competent; if the latter, then his testimony is to be rejected, and the will is invalid. That a person having a claim on an estate for commissions may be said, in the larger acceptation of the term, to have an interest in the estate, may be admitted. But was this large and extended sense that which was in the mind of the Legislature on this occasion? We think not. They had said the previous year that the executor should be admitted without reference to his interest. In making a change, they might have re-

jected his testimony entirely by repealing that clause, which would have removed all doubt on the subject. This they have not done, but amended the law by declaring that he shall not be admitted if " interested in the estate bequeathed or any part thereof," showing that they designed a qualification and restriction, rather than an entire exclusion or prohibition. Besides, repeals are not favored by implication; *leges, posteriores priores contrarias abrogant.* Indeed the statute repeals only so much as is inconsistent, so that a construction must be given, if permitted by a fair interpretation of the words and language used, to avoid a repeal, as was declared by the Court at the present term in the case of Duncan, &c., vs. Stewart, &c.

The fair import of the terms used, we think, conforms to this view. When we speak of an interest in *an estate,* we have reference to the right or title of the owner; in legal language, " of that particular right in a certain piece of land (or other property,) exercisable by its owner "—not to a claim for service rendered it. A devisee or legatee under a will, might assign all his right and interest in the estate bequeathed to him with great propriety. Muscow Fogg, the executor of this will, having no legacy nor devise, but only the prospect of commissions or pay for services to be rendered, could hardly, rightly and with propriety convey these as an interest in the estate bequeathed to him. These commissions are given by the law and not by the testator, and cannot with propriety be termed or regarded as the estate bequeathed, or a part of the estate bequeathed, whereas the interest of the legatee or devisee may well be so considered and regarded. In point of fact, the testator had bequeathed to his wife the entire estate, " with every part and portion of property of which he might die possessed." How then could any one else have

an interest in the estate, or a part of it, bequeathed by the will?

The construction contended for, if extended, would disqualify not only the executor, but all others rendering service to the estate. The Judge of Probate himself is allowed a compensation for his service in taking probate of the will; why is he not incompetent? In like manner the sheriff, appraisers of the estate, the auctioneer, mechanic, merchant and lawyers rendering service, are entitled to compensation; why are they not also disqualified and incompetent witnesses? If an executor had been agent for the testator in his life time, in charge of the same estate, and entitled to compensation for his services, his testimony would have been admissible, as was said by this Court in Croom vs. Noel and wife, 6 Florida, 59, in conformity to established principles. 1 Green., 564. Why then should he be incompetent when the same agency is-continued after his death? We are of opinion then that the law of 1829 repeals the law of 1828 on this subject only so far as the executor may be legatee, devisee, or has an interest in the estate, or a part of it bequeathed to him by the will. We have been referred to decisions in North and South Carolina as applicable to the case.

Without understanding the entire scheme, usage and policy of a State or a particular subject, it is rather difficult to attain a satisfactory conclusion from any particular decision of its Courts; more especially where the clause quoted is not identical with our own. In the decision referred to as having been made in North Carolina, the construction was upon a statute that wills "shall be subscribed in the testator's presence by two witnesses at least, no one of which shall be interested in the devise of said land." The Court say, "the statute (allowing compensation to the executor) *is confined* to the personal estate, as is shown by its making the commission a subject of re-

tainer against creditors, legatees and next of kin. The words of the statute are 'creditors and *all others having an interest in the estate.*' But upon a power to sell land or a devise of it to him in trust to sell, the executor is a mere trustee entitled in England only to his expenses, and here to nothing more, except as a Court of Equity may in its discretion think proper to allow. Of strict right he is entitled to nothing, and therefore cannot be said to be interested in the devise." Tucker vs. Tucker, 5 Ired. Law, 157.

There is no proof in this case that the personalty will be insufficient to pay the debts and the commissions of the executor; on the contrary, the fair inference from the record is, that it will be abundantly able to pay both. In this event, as by our law the executor cannot interfere with the land, nor sell the slaves, there is no pretext for holding, according to this authority, that he has an interest of any kind whatever in the land or slaves. Indeed if this be the case, his duty will be to sell the personalty, collect debts due, pay those owing from the estate, and turn over the slaves and the residue to the devisee. He would then have no interest in either the land or slaves. His interest would be in the personalty; the will for the disposition of which would be established by the other witnesses, and not be dependent upon any proof from him. The remarks of the very intelligent Court as to a disposition of the personalty in the State of North Carolina, are upon very peculiar provisions, not at all like ours, and while they present views somewhat adverse to those now announced, they are not of a character to induce a change on our part.

We do not notice particularly the decisions in the State of South Carolina, as we discover a great difference of opinion amongst the Judges, the later decisions of that enlightened Court overruling two former ones of the same Court, and this dissented from by two of their ablest

Judges. The earlier decisions took the stringent view by excluding the executor, showing very clearly as the course of legislation, indeed in England as well as in this country, an exceeding embarrassment on the subject, and that much injury has resulted from a strict and severe rule. In the case quoted from North Carolina, the Court say, " it is to be regretted indeed that the Legislature has not adopted the policy of the act of Geo. 2, and destroyed the interest of the subscribing witnesses, by making void all gifts in the will to them ; and the want of such a provision is generally felt in this case, as it defeats the most beneficent provisions for the families of the very persons who contest this will." Whilst the Legislature, in the first enactment, may have gone too far to permit proof by an executor, whether interested or not, in the construction we give, our endeavor has been to avoid going to the opposite extreme by excluding him entirely.

We take pleasure in acknowledging our obligations, as well for the arguments of counsel on both sides, as the very conclusive opinion of the Judge of the Circuit Court. We feel indeed that but little has been added to the views presented by him.

The judgment of the Circuit Court will be affirmed with costs.