## MAYOR AND COUNCIL OF EASTMAN *v.* CAMERON.

A petition for the recovery of commissions, which alleges that the plaintiff is entitled to a specified per cent. on a named sum "for receiving the same " and to a like per cent. " for paying the same over," but which does not unequivocally aver that the plaintiff actually received and disbursed the fund referred to, is demurrable for evasiveness and uncertainty.

Argued May 23, — Decided June 7, 1900.

Complaint. Before Judge Smith. Dodge superior court. November term, 1899.

*James Bishop Jr.* and *D. M. Roberts*, for plaintiff in error. *J. E. Wooten* and *W. M. Clements*, contra.

LUMPKIN, P. J. The material portions of the petition of J. B. Cameron against the Mayor and Council of the Town of Eastman are as follows: During the years 1895, 1896, and 1897, he was the clerk and treasurer of said town. It was his

duty to receive and pay out all money coming to the mayor and council from every source. He was entitled, under the charter and ordinances of the town, to commissions of 2½ per cent. on all sums received and paid out by him. Under an act approved December 15, 1894, the mayor and council were authorized to issue school bonds to the amount of $10,000 "In pursuance of said act and the election held thereunder, the said mayor and council, on August 26th, 1897, declared the provisions of said act to be in force, and provided for the issue of the said bonds. And on the first day of September, said mayor and council issued said bonds to the amount of ten thousand dollars and negotiated them at par, and the proceeds thereof were turned over to the board of education of said town, all of which was done as required by the provisions of said act. Petitioner avers that he, being at the time said bonds were issued and negotiated, the clerk and treasurer of said town, and the only officer of said town authorized by the law to receive the proceeds of the sale of said bonds and pay the same over to said board of education, is entitled to a commission of two and one half per cent. on said sum of ten thousand dollars for receiving the same, and two and one half per cent. on said sum for paying the same over to the board of education. Petitioner avers, therefore, that said Mayor and Council of the Town of Eastman, a corporation as aforesaid, is indebted to petitioner in the sum of five hundred dollars for his commissions, as aforesaid, besides interest thereon from the first day of September, 1897, the date on which the said bonds were issued and disposed of." The defendant demurred to this petition on several grounds; and its demurrer having been overruled, the plaintiff had a verdict. The defendant subsequently sued out a bill of exceptions, alleging error in not sustaining its demurrer and in denying its motion for a new trial. Without dealing with this motion or with all of the questions raised by the demurrer, we shall confine ourselves to a brief discussion of the merits of so much thereof as is embraced in the following words: "Because the petition shows that the commissions to which the plaintiff alleges that he was entitled was two and a half per cent. *on money received by him* and two and a half per cent. *on money paid out by him as clerk and treasurer*, but it is not distinctly alleged,

either expressly or by necessary inference to be drawn from the adroit language employed, that the $10,000 for which plaintiff alleges the bonds were negotiated was ever actually received by him or that it was paid out by him. . . Because said petition is evasive, and does not put the court in full possession of all the material facts in reference to the subject-matter of the suit, so as to enable the court to clearly understand the case intended to be made by plaintiff, and expressions are used in the petition, from which different inferences may be drawn."

We think the attack thus made upon the petition was good, and that the demurrer ought to have been sustained. As it directly called upon the plaintiff to say, without evasion, whether or not he actually received and paid out the $10,000, it was incumbent upon him to do so. The evident design of the pleader, so far as the same can be gathered from the allegations contained in the petition framed by him, was to ask for a recovery upon the theory that the facts set forth would warrant· an inference that the plaintiff did receive and disburse the money, and was, therefore, entitled to the commissions claimed; yet, when put to the test, he would not squarely and unequivocally aver that the plaintiff actually received and paid out the money, or that he had really performed any service with respect to this fund. The failure to do this justified the defendant's position that the petition was "evasive," and did not "put the court in full possession of all the material facts in reference to the subject-matter of the suit, so as to enable the court to clearly understand the case intended to be made by plaintiff." If the clerk actually rendered any services in connection with the proceeds of the bonds, or ever in any manner handled the same, it was a very easy matter to say so; and the fact that his counsel, instead of endeavoring to meet the defendant's demurrer by a proper amendment to the petition, deliberately elected to stand upon the same as originally framed, is significant. We therefore have no hesitation in holding that the plaintiff was not entitled to go to trial without curing the defects in his petition which were so plainly and distinctly pointed out.

This ruling may, at first glance, seem somewhat technical, but the soundness of it is illustrated by the result of the case. It appeared at the trial that the plaintiff had never, in point

of fact, received one dollar of the proceeds of the bonds, and therefore his recovery, if sustainable at all, could not possibly be based upon the theory that he had actually rendered services for which he was entitled to compensation. Indeed, his counsel, in a written argument presented to this court, sought to uphold the verdict on an entirely different ground, viz., that the evidence showed that, "To avoid paying this commission, an ordinance was subsequently enacted providing that the mayor and council should deliver the bonds to the board of education of the town of Eastman, which said board negotiated the bonds, and thereby, for the time being, defeated the collection by the said clerk of his commission." In this connection, the case of Board v. City of Decatur, 64 Tex. 7, 53 Am. Rep. 735, was cited and relied on. As will have been observed, however, there is no hint in the petition of a fraudulent purpose on the part of the mayor and council to defeat the plaintiff's rights in the premises by passing an ordinance the effect of which was to prevent the school fund from passing through his hands. Nor does the plaintiff undertake to therein allege that, although he was ready and willing to discharge the duties of his office, he was by any other means or device prevented from receiving, safely keeping, and paying out the fund, and thereby defrauded out of his just commissions. Had the petition been framed on this line, the case laid would have presented an altogether different aspect.

The necessity of observing at least a semblance of good pleading is apparent from what has just been said. The refusal of the trial court to sustain the defendant's demurrer has brought about the anomalous result of the plaintiff obtaining a verdict upon a theory not even remotely hinted at in his petition. While, of course, it is not permissible to look to the evidence in any case with a view to testing the sufficiency of the pleadings, the probable consequences of not requiring good pleading should never be lost sight of; and what transpired on the trial of the present case may very properly, by way of argument, be referred to as illustrating to what bad results defective pleading, if allowed, must inevitably lead.

*Judgment reversed. All concurring, except Fish, J., absent.*