## 348.   WORTH COUNTY *v.* SYKES.

A county is not liable to the county treasurer for commissions upon a fund which he never handled, and which was raised by private donation and deposited with the ordinary, with the conditions imposed that the ordinary should personally disburse it in buying a lot and in paying other expenses in the erection of a public building for the county, and that he should not pay it into the county treasury.

Complaint, from city court of Sylvester—Judge Park.   September 1, 1906.

Argued May 14,—Decided June 20, 1907.

*J. H. Tipton,* for plaintiff in error.   *Polhill & Foy,* contra.

POWELL, J. To influence the removal of the county seat of Worth county from Isabella to Sylvester, citizens of the latter community agreed in public advertisement to erect a new court-house and a jail in the event of such removal, and as a guaranty of good faith deposited with the ordinary of the county certified checks for $10,-000. The removal was duly authorized. Afterwards the ordinary, acting for the county, decided that it would be wise to erect buildings more commodious than those originally planned, and costing more than $10,000. It was thereupon agreed between the ordinary and the committee representing the citizens of Sylvester that out of the fund deposited the ordinary should buy lots for the court-house and the jail, and use the remainder in paying, as far as it would go, other necessary expenses incident to removing the old offices and erecting the new buildings; but it was stipulated, in order to avoid charges for handling the fund, that the same should be disbursed by the ordinary directly, and should not be

handled through the county treasury. There was a condition in the original offer that all expenses of an election contest should first be paid out of the sum above mentioned; and these expenses, amounting to $1,310, were retained before the money was turned over to the ordinary. Out of the fund which went into his hands the ordinary bought lots for the court-house and the jail, and used the remainder of the money, with the exception of about $2,000, in paying the architect's fee and similar bills. Before the sum of $2,000, just referred to, was expended, the ordinary decided to remove from the county; and, with the consent of the committee, he paid that amount into the county treasury. After the funds came into the hands of the ordinary, the county treasurer demanded that they be paid into the treasury. Except to the extent indicated above, this demand was refused. Thereupon the treasurer sued for his commissions on the money and recovered judgment for commissions on the full amount, less the sum retained, for expenses of the contest and the $2,000 which had been paid over to him.

In the argument of the case many nice questions were ably presented. We do not deem it necessary to enter at length upon a discussion of them; for, after full consideration of them all, we think that the case finally turns upon the points herein decided. While by the Political Code, §458, "All county funds are to be paid to and disbursed by the county treasurer, except such as may be specially excepted by law, and then to be collected and disbursed as specially directed," and while by the Political Code, §460, it is the duty of that officer "to diligently collect from all officers and others all county dues," yet we do not think that the fund in controversy was a county fund in the sense used in the statute; nor do we think that the treasurer had the right to demand of the ordinary custody of the same. We concede that the citizens of Sylvester might have made a donation of money to the county funds of the county (indeed, such seems to have been the result when, with their consent, the ordinary paid the $2,000 into the county treasury); and in that event such money would pass beyond the control of the donors and become subject to the sole control of the county authorities. On the other hand, there was no obstacle to prevent their making a donation on the condition that the money should not become county funds, but should be so

invested that it should pass into the custody of the county in the shape of property, and not of cash. The ordinary did not hold the money in this case as the agent of the county as a corporation, but as the agent of the donors; the fund possibly being impressed with an implied trust in favor of the citizens of the county, who are in legal contemplation a different entity from the county as a corporation. Compare *Justices* v. *Plank Road Co.,* 9 *Ga.* 485, 486. The treasurer could not have successfully demanded this fund from the committee of citizens; nor did he have the right to demand it from their agent, the ordinary, although this agency may have been lodged in the same person in whom officially was vested jurisdiction in county matters. If he had demanded the fund of the ordinary, it would have been a complete reply on the latter's part that he had been forbidden to deliver it by the very terms of the conditions on which it came into his hands. Unless the treasurer had a right to demand the fund, his claim to commissions must be unsuccessful. *Wood* v. *Commissioners,* 60 *Ga.* 556; *City of Baxley* v. *Holton,* 114 *Ga.* 724, 40 S. E. 728; *Board of Roads* v. *Clark,* 117 *Ga.* 291, 43 S. E. 722. The county treasurer is not entitled to commissions on anything but money. His bond is not responsible for anything else. The county receives and takes other property without his intervention. The donation in this case, when it came finally into the custody of the county, came as property, not as cash; hence the claim for commissions should have been denied.

It is true that there is in the record an official order of the ordinary, sitting for county purposes, in which it is recited that he accepts the cash deposited with him in lieu of the former proposition of the citizens to erect the buildings; but other recitals in the same order restrict the meaning of the language so used, and it is clear from the parol proof that, even at the time of the passage of this order, the former agreement that the donation should come finally into the custody of the county in the form of specifics bought with the money, and not of cash, was never abrogated. The trial judge held that this parol evidence had no probative value; that it could not vary the recitals of the order. In this he erred. This order was not such a contract as created an estoppel against the truth being shown in variance or explanation thereof. Besides, the treasurer could not make this question, as he was not

a party to the agreement.　The ordinary could not make the county liable for commissions on a fund which he had not in fact received as a county fund, no matter how solemnly he may have asserted he had so received it.　If the recitals of fact of the ordinary in his order are to be taken as meaning that he had received an unconditional donation in cash, in the light of the record such statement was not the truth of the transaction; and the treasurer must recover from the county upon the truth of the transaction, and not otherwise.　　　　　　　　　　　　　　*Judgment reversed.*